WO

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Terrance Cornelis, et al., | No. CV-13-00645-PHX-BSB |
| Plaintiffs, | **ORDER** |
| v. | |
| B&J Smith Associates LLC, et al., | |
| Defendants. | |

Plaintiffs Terrance and Yvonne Cornelis (Plaintiffs) have filed a motion for leave to amend pleadings and are seeking permission to file a second amended complaint. (Doc. 26.)  Defendants B&J Smith Associates, Limited Partnership, B&J Smith Investments, Inc., an Arizona Corporation, Barry M. Smith, Julia P. Smith, and Lynette B. Walbom (Defendants) have moved to dismiss the amended complaint. (Doc. 19.) Both motions are fully briefed. As discussed below, the Court grants Plaintiffs' motion to amend, in part, and denies it in part. The Court also denies Defendants' motion to dismiss as moot.

**I.    Background**

On April 1, 2013, Plaintiffs filed their original complaint alleging violations of the Federal Trade Commission Act, common law fraud, violations of the Small Business Franchise Act, fraud in violation of the Arizona Consumer Fraud Act, a violation of the Uniform Fraudulent Transfer Act, and asserting a claim for "Declaratory Judgment." (Doc. 1.) On May 15, 2013, Defendants filed a motion to dismiss for failure to state a

claim. The Court denied that motion as moot based on Plaintiffs filing of an amended complaint. (Docs. 10, 15, 18.) In their amended complaint, Plaintiffs alleged breach of written contract for debt, common law fraud, violations of the Arizona Consumer Fraud Act, and asserted a claim for "Declaratory Judgment." (Doc. 15.) In their pending motion, Defendants move to dismiss the amended complaint for failure to state a claim and for failure to plead fraud with specificity. (Doc. 19.) Plaintiffs oppose the motion. (Doc. 21.)

After Defendants filed their motion to dismiss, Plaintiffs filed a motion for leave to file a second amended complaint to assert breach of contract, a violation of the Uniform Fraudulent Transfer Act, and Declaratory Judgment. (Doc. 26 at 4-15.)[1] Defendants oppose Plaintiffs' motion and argue that amendment would be futile because the proposed second amended complaint fails to state a claim upon which relief can be granted, fails to plead fraud with particularity, and because Plaintiffs' claims are time barred. (Doc. 27.)

Plaintiffs' allegations in the proposed second amended compliant arise from a restaurant franchise agreement (the Franchise Agreement) that they entered into with Eatza Pizza, Inc. on October 24, 2006. (Doc. 26 at 5; Doc. 24, attachment 1.)[2] Plaintiffs assert that Eatza Pizza made misrepresentations in the October 2006 franchise circular offering, including claims that Eatza Pizza (1) had developed a successful business plan, (2) had developed a distinctive restaurant design and food items, and (3) that its "restaurant system featured the highest standards of management training, supervision, [and] merchandising." (Doc. 26 at 9-10.) The franchise circular offering allegedly induced Plaintiffs to pay $55,000.00 in franchise fees, lease business space, and prepare

---

[1] Plaintiffs' proposed second amended complaint is attached to their motion to amend pleadings, but it is not a separate exhibit. Therefore, the motion and the proposed second amended complaint are paginated sequentially on CM/ECF. Accordingly, the Court cites the CM/ECF page numbers for ease of reference. The proposed second amended complaint appears at Doc. 26 at 4-15.

[2] Document 24 contains numerous exhibits in support of the proposed second amended complaint.

1  to open an Eatza Pizza restaurant. (*Id.*) Plaintiffs allegedly invested a total of
2  $1,100,000.00. (*Id.* at 10.)
3        Plaintiffs assert that, pursuant to an asset purchase agreement dated March 2007,
4  (Asset Purchase Agreement), Eatza Pizza transferred its assets and rights to future
5  royalties from franchises to International Franchise Associates, Inc. (IFA). (*Id*. at 6-7.)
6  Plaintiffs further allege that IFA filed for bankruptcy on August 4, 2008 and, thus, "IFA
7  was an undercapitalized shell corporation formed to avoid its or Eatza Pizza's contractual
8  obligations." (*Id.* at 8.)
9        Plaintiffs allege that Eatza Pizza, and "subsequently IFA," did not provide them
10 with training, support, or a viable business plan to help them develop a profitable
11 restaurant and committed "other acts of bad faith." (*Id.* at 10.) Plaintiffs allege that
12 because of Eatza Pizza's failure to comply with its franchisor obligations, they were
13 forced to cease operating their Eatza Pizza restaurant. Plaintiffs allege that they were not
14 aware of the Asset Purchase Agreement until "[s]ometime [in] June 2008," when another
15 Eatza Pizza franchise owner sent them a copy of that agreement. (*Id.* at 8.)
16       Plaintiffs also allege that B&J Smith Associates and B&J Investments "wholly
17 owned" Eatza Pizza. (*Id.*) They further allege that Lynette Walbom, Barry M. Smith,
18 and Julia P. Smith were the principal officers of B&J Smith Associates and B&J Smith
19 Investments, and that Walbom and Barry Smith "were in complete and daily control of
20 the direction and operation of Eatza Pizza, Inc." (*Id.* at 5. 11.) Plaintiffs invoke this
21 Court's diversity jurisdiction pursuant to 28 U.S.C. § 1332.
22 **II.**   **Standards for Amending Pleadings**
23       Federal Rule of Civil Procedure 15 provides that "[a] party may amend its
24 pleading once as a matter of course." Fed. R. Civ. P. 15(a)(1)(A)-(B) (setting forth
25 conditions for amending as a matter of course). Because Plaintiffs have already filed an
26 amended complaint, and Defendants oppose further amendment, leave of court is
27 required for Plaintiffs to file a second amended complaint. *See* Fed. R. Civ. P. 15(a)(2).
28 The district court should "freely give leave [to amend] when justice so requires."

Fed. R. Civ. P. 15(a)(2).  However, the court may deny leave to amend if the amendment would be futile.  *Foman v. Davis*, 371 U.S. 178, 182 (1962).

Additionally, the court is obligated to "ensure that pro se litigants do not unwittingly fall victim to procedural requirements."  *Waters v. Young*, 100 F.3d 1437, 1441 (9th Cir. 1996).  A court should apply less stringent pleading standards to pro se plaintiffs, such that inartful pleadings are still considered by the court.  *Haines v. Kerner*, 404 U.S. 519, 520–21 (1972); *Weilburg v. Shapiro*, 488 F.3d 1202, 1205 (9th Cir. 2007) ("Pro se complaints are to be construed liberally and 'may be dismissed for failure to state a claim only where it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief.'") (citations omitted)).

**III.    Plaintiffs' Proposed Second Amended Complaint**

**A.    Count One ─ Breach of Contract**

In count one of the proposed second amended complaint, Plaintiffs assert a claim for breach of contract.  (Doc. 26 at 8.)  Plaintiffs allege that B&J Smith Investments, through its general partner B&J Smith Associates, "while in total ownership and control of Eatza Pizza, Inc.," omitted material facts from the October 11, 2006 franchise offering circular including the seller's intention to sell certain assets, changes in litigation, changes in locations owned, changes in franchisees, and changes in the seller's financial position.  (*Id.* at 12.)  Plaintiffs further allege that Barry Smith, Lynette Walbom, and B&J Smith Investments, "through their subsidiaries," misrepresented material facts in the "March 28, 2005 through October 11, 2006 franchise offering circular" including the cost of opening and developing an Eatza Pizza restaurant, first-year operating costs, and advertising expenses.  (*Id.*)  Plaintiffs further allege that B&J Smith Investments, Barry Smith, and Lynette Walbom "through their subsidiaries," represented that Eatza Pizza had "distinctive and identifying recipes, food preparation methods, and food products," "when, in fact, Eatza Pizza knew that it did not."  (*Id.*)

Plaintiffs allege that "the violation by Barry M. Smith and Lynette Walbom, B&J Smith Investments, Inc. through its subsidiaries constitutes many breaches of contract to

- 4 -

include acts of bad faith, fraud, and incapacity to lawfully enter into a contract for purposes of establishing a franchise relationship." (*Id.* at 10.) Plaintiffs further allege that Barry Smith, Lynette Walbom and B&J Smith Investments "through their partners and subsidiaries engaged in deceptive practices" and have "violated the public and legal policy of the State of Arizona, [and the] Arizona Consumer Fraud Act." (*Id.* at 13.)

In response to Plaintiffs' motion for leave to amend, Defendants do not challenge Plaintiffs' general assertion that Eatza Pizza breached the franchise agreement or otherwise challenge the sufficiency of Plaintiffs' allegations in Count One. Instead, Defendants argue that because Plaintiffs entered a contract with Eatza Pizza, Defendants are not parties to the contract and Plaintiffs cannot assert a claim against them for breach of contract. (Doc. 27 at 2-3.) Therefore, Defendants argue that it would be futile to allow Plaintiffs to file a second amended complaint asserting the breach of contract claim alleged in count one because that count fails to state a claim upon which relief could be granted. (*Id.*)

**1. Plaintiffs' Claims against B&J Smith Associates and B&J Smith Investments**

As Defendants have noted, the Franchise Agreement at issue is signed by Plaintiffs and Eatza Pizza. (Doc. 24, attachment 1.) Plaintiffs, however, assert that Defendants B&J Smith Associates and B&J Smith Investments "wholly owned" Eatza Pizza. Liberally construing the proposed second amended complaint, Plaintiffs appear to allege that although B&J Smith Associates and B&J Smith Investments (the Business Entity Defendants) were not signatories to the Franchise Agreement between Eatza Pizza and Plaintiffs, they are liable for Eatza Pizza's alleged breach of the Franchise Agreement under an alter ego theory of liability.

Because this is a diversity case, state law determines whether a parent company should be treated as the alter ego of a subsidiary. *See Hambleton Bros. Lumber Co. v. Balkin Enters.*, 397 F.3d 1217, 1227 (9th Cir. 2005) (noting that in diversity actions, federal courts must apply state law when evaluating alter ego status); *see also Davis v.*

*Metro Prods. Inc.*, 885 F.2d 515, 520–21 (9th Cir.1989) (sitting in diversity and applying Arizona's test for piercing the corporate veil).

The court disregards the corporate form only if the subsidiary is the parent's alter ego or the parent's agent. *Harris Rutsky & Co. Ins. Servs., Inc. v. Bell & Clements Ltd.*, 328 F.3d 1122, 1134 (9th Cir. 2003). To show that B&J Smith Associates or B&J Smith Investments is the alter ego of Eatza Pizza, Plaintiffs must establish that "(1) that there is such unity of interest and ownership that the separate personalities of the two entities no longer exist and (2) that failure to disregard their separate identities would result in fraud or injustice." *Id. See also Loiselle v. Casa Mgmt Group*, *LLC* 228 P.3d 943, 950 (Ariz. Ct. App. 2010); *Gatecliff v. Great Rep. Life Ins. Co.*, 821 P.2d 725, 728 (Ariz. 1991).

In determining whether a parent and subsidiary share "unity of control," Arizona courts often consider the following factors: "stock ownership by the parent; common officers or directors; financing of subsidiary by the parent; payment of salaries and other expenses of subsidiary by the parent; failure of subsidiary to maintain formalities of separate corporate existence; similarity of logo; and plaintiff's lack of knowledge of subsidiary's separate corporate existence." *Id.* Isolated occurrences of some of these factors are not enough to justify an alter ego theory. *See Patterson v. Home Depot, USA, Inc.*, 684 F. Supp. 2d 1170, 1177–79 (D. Ariz. 2010).

Additionally, the parent corporation must exert "substantially total control" over the subsidiary so that the subsidiary becomes "a mere instrumentality" of the parent. *Gatecliff*, 821 P.2d at 728. In sum, "[a]n alter ego or agency relationship is typified by parental control of the subsidiary's internal affairs or daily operations." *Doe v. Unocal Corp.*, 248 F.3d 915, 926 (9th Cir. 2001) (citing *Kramer Motors, Inc. v. British Leyland, Ltd.*, 628 F.2d 1175, 1177 (9th Cir. 1980)).

The Federal Rules of Civil Procedure require that a pleading set forth a "short and plain" statement of the claim showing that the pleader is entitled to relief. Fed. R. Civ. P. 8(a)(2). "In alleging alter ego liability under the pleading standard of Rule 8(a), the plaintiff must do more than make conclusory statements regarding an alter ego

- 6 -

relationship between individual and corporate defendants; the plaintiff must allege specific facts supporting application of the alter ego doctrine." *See Barba v. Seung Heun Lee*, 2009 WL 8747368, at *4 (D. Ariz. Nov. 4, 2009) (comparing *Skydive Ariz., Inc. v. Quattrochi*, 2006 WL 2460595, at *7–8 (D. Ariz. Aug. 22, 2006) (finding plaintiff failed to state a claim against defendants because the complaint simply alleged the alter ego theory with no factual basis), with *Whitney v. Wurtz*, 2006 WL 83119, at *2 (N.D. Cal. Jan. 11, 2006) (finding complaint established a cognizable alter ego theory by alleging individual defendants "used assets of the corporation for their personal use," "controlled, dominated and operated" corporation "as their individual business and alter ego" without "holding of director's or shareholder's meetings," and "caused monies to be withdrawn from the funds of defendant corporation and distributed to themselves without any consideration to the corporation")).

The proposed second amended complaint does not allege specific facts to establish alter ego liability for either B&J Smith Associates or B&J Smith Investments. Plaintiffs' conclusory allegations that B&J Smith Investments and B&J Smith Associates "wholly owned" Eatza Pizza are not sufficient. Plaintiff does not specify how the interests of the companies were unified or why fraud or injustice would result from respecting their separate corporate status.

Although the proposed second amended complaint does not include sufficient allegations to state a claim against the Business Entity Defendants under an alter ego theory of liability, Plaintiffs could possibly cure those deficiencies. *See Karim–Panahi v. L.A. Police Dep't*, 839 F.2d 621, 623 (9th Cir. 1988) (a pro se litigant must be given leave to amend "unless it is absolutely clear that the deficiencies of the complaint could not be cured by amendment."). Therefore, the Court denies Plaintiffs' motion to file the proposed second amended complaint in the form attached to Plaintiffs' motion to amend, but grants the motion to allow Plaintiffs another opportunity to amend their complaint to state a claim for breach of contract, based on alter ego liability, against the Business Entity Defendants. Within thirty days of the date of this Order, Plaintiffs may file

another second amended complaint. Plaintiffs' amended pleading must cure the deficiencies identified in this Order.

### 2. Plaintiffs' Claims against Lynette Walbom, Barry Smith, and Julia Smith

Plaintiffs also appear to allege that Defendants Walbom, Barry Smith, and Julia Smith (the Individual Defendants) are liable for the actions of B&J Smith Associates and B&J Smith Investments under an alter ego theory of liability. Plaintiffs allege that Defendants Walbom, Barry Smith, and Julia Smith were "corporate officers" of those entities and that Walbom and Barry Smith "were in complete and daily control of the direction and operation of Eatza Pizza Inc." (Doc. 26 at 11.)

In Arizona, "alter-ego status . . . exists when there is such a unity of interest and ownership that the separate personalities of the corporation and owners cease to exist." *Dietel v. Day*, 492 P.2d 455, 457 (Ariz. Ct. App. 1972). As set forth above, the relevant factors to determine alter ego liability include: payment of salaries and expenses of the corporation by shareholders; failure to maintain corporate formalities; undercapitalization; commingling of corporate and personal finances; plaintiff's lack of knowledge about a separate corporate existence; owners making interest free loans to the corporation; and diversion of corporate property for personal use. *Great Am. Duck Races, Inc. v. Intellectual Solutions, Inc.*, 2013 WL at 1092990, at \*2 (D. Ariz. Mar. 15, 2013) (citing *Deutsche Credit Corp. v. Case Power & Equip. Co.*, 876 P.2d 1190, 1195 (Ariz. Ct. App. 1994)). A plaintiff alleging alter ego liability "must do more that make conclusory statements regarding an alter ego relationship between individual and corporate defendants; the plaintiff must allege specific facts supporting application of the alter ego doctrine." *See Barba*, 2009 WL 8747368, at \*4 (comparing *Skydive Ariz., Inc.*, 2006 WL 2460595, at \*7–8 with *Whitney*, 2006 WL 83119, at \*2).

The proposed second amended complaint does not satisfy this standard and therefore does not state a claim that the Individual Defendants are liable for the actions of B&J Smith Associates and B&J Smith Investments. The proposed second amended

complaint merely asserts that Walbom, Barry Smith, and Julia Smith were the principal officers of B&J Smith Investments and B&J Smith Associates. There are no specific allegations regarding the application of alter ego liability to the Individual Defendants. Without such allegations, the issue of alter ego, or veil piercing, is not sufficiently pleaded. *Skydive Ariz., Inc.*, 2006 WL 2460595, at *7–8 (finding that conclusory allegations that corporate defendants were the alter ego of the individual defendants did not sufficiently allege an alter ego theory). However, because Plaintiffs are proceeding without counsel and could possibly cure the deficiencies, the Court will allow them an opportunity to file another amended complaint that corrects the deficiencies identified in this Order. *See Karim–Panahi*, 839 F.2d at 623. Therefore, within thirty days of the date of this Order, Plaintiffs may file another amended complaint to state a claim for breach of contract, based on alter ego liability, against the Individual Defendants.

### 3. Defendants' Statute of Limitations Defense

Defendants also argue that it would be futile to allow Plaintiffs to file the proposed second amended complaint to assert a breach of contract claim because any such claim would be barred by the six-year statute of limitations that applies to written contracts under Arizona law. The proposed second amended complaint does not allege a breach of contract occurring within the six years before Plaintiffs filed suit in this matter on April 1, 2013. Nonetheless, Plaintiffs argue that the Court should toll the statute of limitations "due to Plaintiffs (sic) mental incapacity." (Doc. 27 at 3.) Defendants assert that the Court should disregard Plaintiffs' attempts to explain the delayed filing of this action because Plaintiffs sued Eatza Pizza, Inc. for nearly identical claims in 2009. *See Cornelis v. Eatza Pizza, Inc.,* 10cv1589-PHX-TMB.

The statute of limitations in Arizona is six years for breach of a written contract. Ariz. Rev. Stat. § 12-548. Under the discovery rule, a cause of action does not accrue until the plaintiff knows, or with reasonable diligence should have known, the facts underlying the cause. *Doe v. Roe*, 955 P.2d 951, 960 (Ariz. 1998). The discovery rule is premised upon the notion "that it is unjust to deprive a plaintiff of a cause of action

before the plaintiff has a reasonable basis for believing that a claim exists." *Gust, Rosenfeld & Henderson v. Prudential Ins. Co. of Am.*, 898 P.2d 964, 967 (Ariz. 1995) (stating that the discovery rule applies to breach of contract actions).

Plaintiffs allege that they entered into the Franchise Agreement on October 24, 2006, and that Eatza Pizza entered into the Asset Purchase Agreement with IFA in March 2007. Plaintiffs appear to allege that Eatza Pizza breached its Franchise Agreement with Plaintiffs by entering the Asset Purchase Agreement. Plaintiffs allege that under the Asset Purchase Agreement, Eatza Pizza was unable to satisfy its obligations under the Franchise Agreement, including the requirements to provide Plaintiffs training and technical support.

Plaintiffs assert that they did not know about the Asset Purchase Agreement until "[s]ometime [in] June 2008" when another Eatza Pizza franchisee sent them of a copy of that agreement. (Doc. 26 at 8.) Plaintiffs allege that "it was by and through review of this document that Cornelis learned of the breaches of contract and violations of various laws by Barry M. Smith and Lynette Walbom, B&J Smith Investments, Inc., and their general partner B&J Associates LLC." (Doc. 28 at 2.) Therefore, Plaintiffs argue that the statute of limitations period should commence on the date that they discovered the Asset Purchase Agreement. If the limitations period for the breach of contract claim commenced on June 1, 2008, as Plaintiffs assert, their complaint, filed on April 1, 2013, would be timely.

Because it does not appear "beyond [a] doubt that the plaintiff[s] can prove no set of facts that would establish the timeliness of the claim," permitting Plaintiffs leave to further amend their complaint to assert a breach of contract claim would not be futile. *Hernandez v. City of El Monte*, 138 F.3d 393, 402 (9th Cir. 1998) (quoting *Supermail Cargo, Inc. v. United States*, 68 F.3d 1204, 1206 (9th Cir. 1995)). Therefore, as previously stated, the Court will grant Plaintiffs leave to file another second amended complaint that cures the deficiencies identified in this Order. To cure these deficiencies, Plaintiffs must identify the conduct that constituted the alleged breach of the Franchise

Agreement, the date on which that conduct occurred, or the date on which they discovered, through the exercise of due diligence, that such conduct had occurred.  *See* Rule 8(a); *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007) (although "detailed factual allegations" are not necessary to meet [Rule 8's] pleading requirement, the plaintiff must, at a minimum, set forth factual allegations sufficient "to raise a right to relief above the speculative level.").

### B.     Count Two ─ Uniform Fraudulent Transfer Act

Count two of the proposed second amended complaint alleges a violation of Arizona's Uniform Fraudulent Transfer Act (UFTA), Ariz. Rev. Stat. § 44-1001-1010. (Doc. 26 at 13.)  Plaintiffs allege that B&J Smith Investments "through its partners and subsidiaries" transferred ownership of five restaurants' equipment and furniture and the right to collect royalties from the Eatza Pizza franchises.  (*Id.*)

Defendants assert that permitting Plaintiffs to amend their amended complaint to assert this claim would be futile because it is time barred.  A claim for relief with respect to a fraudulent transfer under the UFTA is "extinguished unless it is brought . . . within four years after the transfer was made or the obligation was incurred or, if later, within one year after the fraudulent nature of the transfer or obligation was or through the exercise of reasonable diligence could have been discovered by the claimant." Ariz. Rev. Stat. § 44-1009.

The proposed second amended complaint alleges that the fraudulent transfer at issue, the Asset Purchase Agreement, occurred in March 2007.  (Doc. 26 at 8.)  Thus, even as alleged, the transfer occurred over six years before Plaintiffs filed this action, which is well outside of the four-year limitations period.  Plaintiffs assert that they became aware of the alleged fraudulent transfer "sometime [in] June 2008" when another Eatza Pizza franchise owner sent them a copy of the Asset Purchase Agreement. (Doc. 26 at 5.)  Even assuming that Plaintiffs did not become aware of the alleged fraudulent transfer until June 2008, their UFTA claim is extinguished pursuant to Ariz. Rev. Stat. § 44-1009 because they did not file this action within one year after they

1 discovered the fraudulent nature of the transaction. *Id*. To the extent that Plaintiffs argue that the time periods in § 44-1009 should be tolled due to Mr. Cornelis's medical issues (Doc. 28 at 3-4), those arguments are unavailing because "[a] claim that has been extinguished cannot be tolled."[3] *Warfield v. Alaniz*, 453 F. Supp. 2d 1118, 1130 (D. Ariz. 2006.) Accordingly, granting Plaintiffs leave to further amend their pleadings to allege a UFTA claim would be futile. Therefore, the Court denies Plaintiffs leave to amend to allege a UFTA claim.

### C. Count Three ─ Declaratory Judgment

In count three of the proposed second amended complaint, Plaintiffs assert a claim for "Declaratory Judgment." (Doc. 26 at 14.) Defendants argue that it would be futile for the Court to grant Plaintiffs leave to further amend their pleadings to assert a claim for declaratory judgment because it is not an independent claim for relief. A claim for declaratory relief cannot stand on its own. *See Shroyer v. New Cingular Wireless Servs., Inc.*, 622 F.3d 1035, 1044 (9th Cir. 2010) (affirming dismissal of claims for declaratory relief based on dismissal of claims for substantive relief); *Hoeck v. City of Portland*, 57 F.3d 781, 787 (9th Cir. 1995) (having "determined that the City did not violation [plaintiff's] substantive due process rights, [the court] find[s] that [plaintiff's] claim for declaratory relief is likewise without merit."). However, based on the procedural posture of this case, the Court cannot conclude that permitting Plaintiffs to amend their complaint to seek declaratory relief would be futile. Accordingly, the Court will grant Plaintiffs' leave to amend their complaint to include a request for declaratory relief. Plaintiffs must specify that nature of the declaratory relief they seek. *See* Rule 8(a).

---

[3] "A statute of limitations is a procedural device that operates as a defense to limit the remedy available for an existing cause of action." *Warfield*, 453 F. Supp. 2d at 1130 (citing *Duran v. Henderson*, 71 S.W.3d 833, 837 (Tex. Ct. App. 2002)). In contrast, a statute of repose "creates a substantive right to be free from liability after a legislatively-determined period." *Warfield*, 453 F. Supp. 2d at 1118. "[A] statute of repose extinguishes the claim after the specified time period has expired. *Id*. (citing *United States v. Bacon*, 82 F.3d 822, 823 (9th Cir. 1996)). The Arizona Court of Appeals has referred to Ariz. Rev. Stat. § 44-1009 as a statute of repose and declined to apply the principles of equitable tolling to the time limits in that statute. *See Warfield*, 453 F. Supp. 2d at 1130 (citing *Moore v Browning*, 50 P.3d 852, 858, 860 (Ariz. Ct. App. 2002)).

**IV.     Summary**

The Court will grant Plaintiffs' motion for leave to amend their pleadings in part and deny it in part. The Court grants Plaintiffs leave to file a second amended complaint alleging a breach of contract claim that cures the deficiencies identified in this Order. Plaintiffs may also request declaratory relief in the second amended complaint. The Court denies Plaintiffs leave to amend to allege a UFTA claim because such a claim is extinguished by Ariz. Rev. Stat. § 44-1009, thus permitting leave to assert a UFTA claim would be futile. Because of the deficiencies in the proposed second amended complaint that Plaintiffs attached to their motion to amend, Plaintiffs must not file that particular pleading with the Court. Rather, Plaintiffs must file a new second amended complaint that corrects the deficiencies in this Order.

For purposes of the second amended complaint, the Court directs Plaintiffs to Rule 8, which requires:

> [a] pleading that states a claim for relief must contain (1) a short and plain statement of the grounds for the court's jurisdiction, . . (2) a short and plain statement of the claim showing that the pleader is entitled to relief, and (3) a demand for the relief sought, which may include relief in the alternative or different types of relief.

Fed. R. Civ. P. 8(a). Plaintiffs must become familiar with, and follow, the Federal Rules of Civil Procedure and the Local Rules of Civil Procedure for the United States District Court for the District of Arizona ("Local Rules"). *See King v. Atiyeh*, 814 F.2d 565, 567 (9th Cir. 1986) ("Pro se litigants must follow the same rules of procedure that govern other litigants."). The Federal Rules of Civil Procedure and this Court's Local Rules are available online at the District of Arizona's website, www.azd.uscourts.gov, under the tab "Rules, General Orders & Forms." If Plaintiffs fails to prosecute this action, or fail to comply with the Federal Rules of Civil Procedure, Local Rules, or any Court order, the Court may dismiss the action with prejudice pursuant to Rule 41(b) of the Federal Rules of Civil Procedure. *See Ferdik v. Bonzelet*, 963 F.2d 1258, 1260 (9th Cir.1992).

- 13 -

Because the Court is granting Plaintiffs leave to file a second amended complaint, the Court will deny Defendants' motion to dismiss the amended complaint as moot. Defendants' motion to dismiss is denied without prejudice and Defendants may renew their motion to dismiss, if they deem it appropriate, in response to the second amended complaint that Plaintiffs file in response to this Order or if Plaintiffs do not file another second amended complaint.

Accordingly,

**IT IS ORDERED** that Plaintiffs' Motion for Leave to Amend Pleadings (Doc. 26) is **GRANTED** in part and **DENIED** in part. It is ordered granting Plaintiffs' motion for leave to amend to request declaratory relief and to add a breach of contract claim that corrects the deficiencies identified in this Order. It is ordered denying Plaintiffs leave to amend to add a UFTA claim. Pursuant to LRCiv 15.1, within **thirty days** of the Order, Plaintiffs must file and serve a second amended complaint that complies with this Order.

**IT IS FURTHER ORDERED** that Defendants' Motion to Dismiss the Amended Complaint (Doc. 19) is **DENIED** as moot.

Dated this 20th day of December, 2013.

_____
Bridget S. Bade
United States Magistrate Judge