WO

# IN THE UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Terrance Cornelis, et al., | No. CV-13-00645-PHX-BSB |
| Plaintiffs, | **ORDER** |
| v. | |
| B&J Smith Associates LLC, et al., | |
| Defendants. | |

Defendants B&J Smith Associates, Limited Partnership, B&J Smith Investments, Inc., an Arizona Corporation, Barry M. Smith, Julia P. Smith, and Lynette B. Walbom (Defendants) have filed a motion to dismiss the second amended complaint.  (Doc. 34.) Plaintiffs Terrance and Yvonne Cornelis (Plaintiffs) oppose the motion.  (Doc. 36.)  For the reasons below, the Court grants Defendants' motion and dismisses this action.[1]

## I.    Background

On April 1, 2013, Plaintiffs filed their original complaint alleging violations of the Federal Trade Commission Act, common law fraud, violations of the Small Business Franchise Act, fraud in violation of the Arizona Consumer Fraud Act, a violation of the Uniform Fraudulent Transfer Act, and asserting a claim for "Declaratory Judgment."

---

[1]  Defendants request oral argument on the motion.  (Doc. 34.)  Because the parties have sufficiently briefed the motion, oral argument is not necessary to resolve the pending motion and the Court denies Defendants' request.  *See Mahon v. Credit Bur. of Placer County, Inc.*, 171 F.3d 1197,1200 (9th Cir. 1999) (explaining that if the parties provided the district court with complete memoranda of the law and evidence in support of their positions, ordinarily, oral argument is not required).

1    (Doc. 1.)  On May 15, 2013, Defendants filed a motion to dismiss for failure to state a

2    claim.  (Doc. 10.)  In response, Plaintiffs filed a first amended complaint and the Court

3    denied Defendants' motion as moot.  (Doc. 18.)

4          On July 13, 2013, Defendants filed a motion to dismiss the first amended

5    complaint for failure to state a claim.  (Doc. 19.)  Plaintiffs then attempted to file another

6    amended complaint.  The Court ordered the Clerk of Court to strike that complaint

7    because Plaintiffs had not complied with Federal Rule of Civil Procedure 15(a)(2).

8    (Docs. 22-23.)  On August 9, 2013, Plaintiffs filed a motion for leave to file a second

9    amended complaint.  (Doc. 26.)  The Court granted, in part, and denied, in part,

10   Plaintiffs' motion to amend, and denied Defendants' motion to dismiss the first amended

11   complaint as moot.  (Doc. 31.)  On February 18, 2014, Plaintiffs filed a second amended

12   complaint.  (Doc. 32.)

13   **II.    Second Amended Complaint**

14         The second amended complaint includes one count for breach of written contract

15   (labeled Count I) and a section entitled "Alter Ego."  (Doc. 32.)  Plaintiffs' allegations in

16   Count I arise from a restaurant franchise agreement (the Franchise Agreement) that they

17   entered into with Eatza Pizza, Inc. (Eatza Pizza) on October 24, 2006.[2]  (Doc. 32 at ¶ 13.)

18   Plaintiffs assert that Eatza Pizza made misrepresentations in "the Franchise Offering

19   Circular," including claims that Eatza Pizza (1) had developed a successful business plan,

20   (2) had developed a distinctive restaurant design and food items, and (3) that its

21   "restaurant system featured the highest standards of management training, supervision,

22   merchandising, and quality food products."  (*Id.* at ¶¶ 29-30.)  The Franchise Offering

23

---

24         [2]   After Plaintiffs filed the second amended complaint, they filed exhibits in
25   support of that complaint.  (Doc. 37.)  Plaintiffs previously filed these same exhibits in
     support of their original complaint and a proposed second amended complaint.
26   (Docs. 14, 24.)  Although Plaintiffs should have attached these exhibits to their second
     amended complaint, their failure to do so does not appear to be in bad faith and
27   permitting Plaintiffs to incorporate the exhibits into their second amended complaint will
     not prejudice Defendants who have previously seen these exhibits and have not objected
28   to their authenticity.  (Doc. 34 at 7-8; Doc. 38 at 3-4.)  Accordingly, the Court considers
     the exhibits at docket 37 incorporated into the second amended complaint.

1    Circular allegedly induced Plaintiffs to pay $55,000.00 in franchise fees, lease business

2    space, and prepare to open an Eatza Pizza restaurant. (*Id.* at ¶ 31.) Plaintiffs allegedly

3    invested a total of $1,100,000.00. (*Id.*)

4         Plaintiffs assert that, pursuant to an asset purchase agreement dated March 2007,

5    (Asset Purchase Agreement), B&J Smith Associates, LLC (B&J Smith Associates) and

6    B&J Smith Investments, Inc. (B&J Smith Investments) sold Eatza Pizza to International

7    Franchise Associates, Inc. (IFA). (Doc. 32 at ¶ 3.) Plaintiffs further allege that IFA filed

8    for bankruptcy on August 4, 2008 and, thus, "IFA was an undercapitalized shell

9    corporation formed to avoid its or [Eatza Pizza's] contractual obligations." (*Id.* at ¶¶ 3,

10   21.)

11        Plaintiffs allege that Eatza Pizza, and "subsequently IFA," did not provide them

12   with training, support, or a viable business plan to help them develop a profitable

13   restaurant and committed "other acts of bad faith." (*Id.* at ¶ 32.) Plaintiffs allege that

14   because of Eatza Pizza's failure to comply with its franchisor obligations, they were

15   forced to cease operating their Eatza Pizza restaurant. (*Id.* at ¶ 33.) Plaintiffs claim that

16   they were not aware of the Asset Purchase Agreement until "[s]ometime [in] June 2008,"

17   when another Eatza Pizza franchise owner sent them a copy of that agreement. (*Id.* at

18   ¶¶ 9, 19.)

19        Plaintiffs also allege that B&J Smith Associates and B&J Smith Investments

20   owned Eatza Pizza. (*Id.* at ¶ 3.) They further allege that Lynette Walbom (Walbom),

21   Barry M. Smith (Barry Smith), and Julia P. Smith (Julia Smith) were corporate officers of

22   B&J Smith Associates and B&J Smith Investments (*Id.* at ¶ 2), and that Walbom and

23   Barry Smith "were in complete and daily control of the direction and operation of Eatza

24   Pizza, Inc." (*Id.* at  41.)

25   **III.    Subject Matter Jurisdiction**

26        The second amended complaint alleges state law violations and invokes this

27   Court's diversity jurisdiction pursuant to 28 U.S.C. § 1332. District courts have diversity

28   jurisdiction over civil actions when there is complete diversity between the parties and

1    the amount in controversy exceeds $75,000.  *See* 28 U.S.C. § 1332(a).  For purposes of

2    determining diversity jurisdiction, an individual person is deemed a citizen of the state in

3    which he is domiciled.  *Lew v. Moss*, 797 F.2d 747, 749 (9th Cir. 1986).  A corporation is

4    deemed a citizen of every state in which it has been incorporated and of the state in which

5    it has its principal place of business.  *See* 28 U.S.C. § 1332(c)(1); *Hertz Corp. v. Friend*,

6    559 U.S. 77, 80-81 (2010) (a complaint must allege both the corporation's state of

7    incorporation and location of the principal place of business, which is its "nerve center.").

8    Partnerships and limited liability companies (LLC) are citizens of every state in which

9    their owners or members are citizens.  *See Johnson v. Columbia Props. Anchorage*, *LP*,

10   437 F.3d 894, 899 (9th Cir. 2006).  At the pleading stage, a party seeking to invoke

11   diversity jurisdiction should affirmatively allege, but need not prove, the actual

12   citizenship of the parties.  *Kanter v. Warner-Lambert Co*., 265 F.3d 853, 857 (9th Cir.

13   2001) ("[I]n a diversity action, the plaintiff must state all parties' citizenships such that

14   the existence of complete diversity can be confirmed.") (citation omitted).

15       Here, Plaintiffs have filed the second amended complaint from a North Carolina

16   address and allege that they are "citizens residing in" North Carolina.[3]   (Doc. 32.)

17   Plaintiffs also allege that B&J Smith Investments, identified by Plaintiffs and Defendants

18   as a corporation, is an Arizona corporation with its principal place of business in Arizona.

19   (Doc. 32 at ¶2.)   Plaintiffs further allege that "B&J Smith Investments, LLC" is an

20   "Arizona corporation."  (*Id.*)   However, Defendants identify that entity as a limited

21   partnership and the Court assumes that Defendants' designation of B&J Smith Associates

22   as a limited partnership is correct.  A complaint "must expressly identify each member of

23   any limited partnership, and/or limited liability companies, along with each member's

24   citizenship.  Such jurisdictional allegations are necessary for [the] Court to conclude

---

[3] "Diversity jurisdiction is based on *citizenship*, not residency."  *Kalinowski v. Davol, Inc.*, 2006 WL 2615894, at *2 (D. Ariz. Sept. 11, 2006) (emphasis in original). However, liberally construed, the second amended complaint alleges that Plaintiffs are citizens of North Carolina.

- 4 -

1   whether diversity jurisdiction is satisfied." *Liberty Propane, LP v. Feheley*, 2006 WL

2   2553396, at *1 n.1 (D. Ariz. Aug. 29, 2006).

3         The second amended complaint does not identify each member of B&J Smith

4   Associates and does not identify each member's citizenship.   The second amended

5   complaint also fails to allege the citizenship of individual Defendants Barry Smith, Julia

6   Smith, and Walbom.   Accordingly, Plaintiffs have failed to satisfy the minimum diversity

7   requirements of § 1332(a)(1).   Although Plaintiffs could possibly cure these defects, the

8   Court will not give Plaintiffs an opportunity to file another amended complaint because

9   even if the jurisdictional defects were cured, their claims against Defendants are subject

10  to dismissal for the additional reasons set forth below.

11  **IV.   Rule 12(b)(6) — Dismissal for Failure to State a Claim**

12        The Federal Rules of Civil Procedure require "'a short and plain statement of the

13  claim showing that the pleader is entitled to relief,' in order to 'give the defendant fair

14  notice of what the . . . claim is and the grounds upon which it rests.'"  *Bell Atl. Corp. v.*

15  *Twombly*, 550 U.S. 544, 555 (2007) (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957));

16  *see also* Fed. R. Civ. P. 8(a)(2).   Thus, dismissal for insufficiency of a complaint is

17  proper if the complaint fails to state a claim on its face.  *Lucas v. Bechtel Corp.*, 633 F.2d

18  757, 759 (9th Cir. 1980); *see also* Fed. R. Civ. P. 12(b)(6).   Although a complaint "does

19  not need detailed factual allegations, a plaintiff's obligation to provide the 'grounds' of

20  his 'entitle[ment] to relief' requires more than labels and conclusions, and a formulaic

21  recitation of the elements of a cause of action will not do."  *Twombly*, 550 U.S. at 555

22  (citations omitted).

23        A Rule 12(b)(6) dismissal for failure to state a claim can be based on either (1) the

24  lack of a cognizable legal claim, or (2) insufficient facts to support a cognizable legal

25  claim.  *Balistreri v. Pacifica Police Dep't*, 901 F.2d 696, 699 (9th Cir. 1990); *Robertson*

26  *v. Dean Witter Reynolds, Inc.*, 749 F.2d 530, 534 (9th Cir. 1984).   When considering a

27  motion to dismiss, the court takes all allegations of material fact as true and construes

28  them in the light most favorable to the non-moving party.  *Clegg v. Cult Awareness*

1    *Network*, 18 F.3d 752, 754 (9th Cir. 1994).  "[F]or a complaint to survive a motion to

2    dismiss, the non-conclusory 'factual content,' and reasonable inferences from that

3    content, must be plausibly suggestive of a claim entitling the plaintiff to relief."  *Moss v.*

4    *U.S. Secret Serv.*, 572 F.3d 962, 969 (9th Cir. 2009) (quoting *Ashcroft v. Iqbal*, 556 U.S.

5    662 (2009)).  In other words, the complaint must contain enough factual content "to raise

6    a reasonable expectation that discovery will reveal evidence" of the claim.  *Twombly*, 550

7    U.S. at 556.

8    **V.    Plaintiffs' Claims**

9           Plaintiffs identify "Count I" of the second amended complaint as asserting a claim

10   for breach of contract, but they allege several theories of recovery within that count,

11   including: (1) violations of the Federal Trade Commission Act (FTCA), 15

12   U.S.C. § 45(a)(1) (Doc. 32 at ¶¶ 41, 45); (2) common law fraud, fraudulent

13   misrepresentation, and a violation of the Arizona Consumer Fraud Act (Doc. 32 at ¶¶ 42,

14   43, 44, 47); and (3) breach of contract (the Franchise Agreement).  (Doc. 32 at ¶¶ 12, 46.)

15   The second amended complaint further alleges that, although Defendants were not parties

16   to the Franchise Agreement, they are liable for the alleged breach of that contract under

17   the alter ego doctrine.[4]  (Doc. 12.)

18          In their motion to dismiss, Defendants argue the claims asserted in the second

19   amended complaint are based on a statute that does not create a private cause of action

20   (violations of the FTCA), are time barred (fraud-related claims), or do not allege

21   _____

22          [4]  Count I of the second amended complaint also alleges "acts of bad faith" and
     "incapacity to lawfully enter into a contract for purposes of establishing a franchise
23   relationship."  (Doc. 32 at ¶ 46.)  The aggregation of multiple legal theories into one
     count does not satisfy the pleading standards of Rule 8.  *See Juniel v. Lab. Corp. of Am.*,
24   2013 WL 2297180, at *3 (D. Ariz. May 24, 2013) (a complaint consisting of a "lengthy,
     disjointed paragraphs that do not clearly set forth [p]laintiff's separate causes of action,"
25   does not satisfy Rule 8(a)(2)).  Moreover, these allegations are conclusory and the factual
     elements supporting them are not organized in "a short and plain statement of the claim."
26   *See* Fed. R. Civ. P. 8(a).  "A complaint having the factual elements of the cause of action
     present, but scattered throughout the complaint and not organized into a 'short and plain
27   statement of the claim' may be dismissed for failure to satisfy Rule 8(a)."  *Henkels v. J.P.*
     *Morgan Chase*, 2011 WL 2357874, at *2 (D. Ariz. Jun. 14, 2011) (citing *Sparling v.*
28   *Hoffman Constr. Co.*, 864 F.2d 635, 640 (9th Cir. 1988)).

1    sufficient facts to state a claim for relief (breach of contract liability based on the alter
2    ego doctrine).  (Doc. 34.)  As set forth below, the Court agrees and grants Defendants'
3    motion to dismiss the second amended complaint for failure to state a claim.

4        **A.    Claims under the Federal Trade Commission Act**

5            Plaintiffs allege that Barry Smith, Lynette Walbom, and B&J Smith Investments,
6    through their general partner B&J Smith Associates "while in total control of Eatza Pizza
7    has engaged in deceptive acts and practices, including selling [Plaintiffs] a franchise
8    when, by their own admission in the Asset Purchase Agreement, they were not in
9    compliance with the Federal Trade Commission Rules and Regulations."  (Doc. 32 at
10   ¶ 41.)  Plaintiffs assert that this conduct, and Defendants' failure "to provide disclosure of
11   material changes and mispresent[ation] of material facts pertinent to the operation of an
12   Eatza Pizza restaurant," establish a violation of Federal Trade Commission Act, 15
13   U.S.C. § 45(a)(1).  (*Id.* at ¶¶ 41, 45.)

14           The FTCA prohibits "unfair or deceptive acts or practices in or affecting
15   commerce."  15 U.S.C. § 45(a)(1).  The FTCA vests remedial power solely in the Federal
16   Trade Commission and does not grant a private cause of action.  *See* 15 U.S.C.
17   § 45(a)(2); *see also Dreisbach v. Murphy*, 658 F.2d 720, 730 (9th Cir. 1981) (finding that
18   "private litigants may not invoke the jurisdiction of the federal district courts by alleging
19   that defendants engaged in business practices proscribed by § 5(a)(1)."); *Carlson v.
20   Coca-Cola Co.*, 483 F.2d 279, 280 (9th Cir. 1973) ("The protection against unfair trade
21   practices afforded by the Act vests initial remedial power solely in the Federal Trade
22   Commission"); *Diessner v. Mortg. Elec. Registration Sys.*, 618 F. Supp. 2d 1184, 1191
23   (D. Ariz. 2009) (dismissing claims under the FTCA stating that "there is no private right
24   of action under the FTCA.").  Accordingly, Plaintiffs cannot assert a cause of action for a
25   violation of the FTCA and the Court dismisses the FTCA claim.  *See Sakugawa v.
26   IndyMac Bank, F.S.B.*, 2010 WL 4909574, at *5 (D. Haw. Nov. 24, 2010) (noting that the
27   FTCA does not create a private right of action and dismissing FTCA claim without leave
28   to amend).

- 7 -

### B.        Fraud−Related Claims

In Count I, Plaintiffs also assert several fraud-related claims against Defendants. Plaintiffs assert that Barry Smith and Walbom committed "contract fraud" by using Steve Belden, the CEO of Eatza Pizza, to sign the Franchise Agreement on their behalf. (Doc. 32 at ¶ 42.)  Plaintiffs further allege that "[t]he individual Defendants and corporate Defendants" employed "a scheme and artifice to defraud" Plaintiffs and intentionally omitted material facts from the October 11, 2006 Franchise Offering Circular including the "seller's intention to sell certain of its assets, changes in litigation, locations owned, changes in franchisees, or changes in financial position of seller." (Doc. 32 at ¶ 43.)

Plaintiffs also allege that the "individual Defendants along with the corporate Defendants . . . misrepresented material facts in the March 28, 2005 through October 11, 2006 Franchise Offering Circular," including the "cost of opening and developing an Eatza Pizza restaurant, cost of first year operating and advertising expenses," and "[c]laims to have distinctive and identifying recipes, food preparation methods, and food products . . . ." (*Id.* at ¶ 44.)  Plaintiffs assert that these deceptive practices constituted fraud and violated the Arizona Consumer Fraud Act. (Doc. 32 at ¶ 47.)

### 1.        Common Law Fraud and Fraudulent Misrepresentation

To the extent that Plaintiffs allege common law fraud and fraudulent misrepresentation, those claims are time barred because such claims must be filed "within three years after the cause of action accrues." *See* Ariz. Rev. Stat. § 12-543(3);[5] *Serrano v. Serrano*, 2012 WL 75639, at *3 (Ariz. Ct. App. Jan. 10, 2012) (stating that, under Arizona law, the statute of limitations for "fraudulent conveyance, fraudulent concealment, fraudulent misrepresentation, and aiding and abetting fraud is three years."). The cause of action accrues upon "the discovery by the aggrieved party of the

---

[5]   Section 12-543(3) provides that "[t]here shall be commenced and prosecuted within three years after the cause of action accrues, and not afterward, the following actions . . . [f]or relief on the ground of fraud or mistake, which cause of action shall not be deemed to have accrued until the discovery by the aggrieved party of the facts constituting the fraud or mistake."

facts constituting the fraud or mistake." Ariz. Rev. Stat. § 12-543(3); *see Transamerica Ins. Co. v. Trout*, 701 P.2d 851, 854 (Ariz. Ct. App. 1985) (stating that "[t]he discovery dates from the time that [the party], by exercise of reasonable diligence, might have discovered the fraud.").

Plaintiffs do not specifically allege when they discovered, or might have discovered, the facts constituting the fraud.  Rather, the second amended complaint states that "[s]ometime [in] June 2008," another Eatza Pizza franchise owner sent Plaintiffs a copy of the Asset Purchase Agreement between Barry Smith, Walbom, and IFA. (Doc. 32 at ¶ 19.)  In the response to the motion to dismiss, Plaintiffs assert that the Asset Purchase Agreement "proved to the Plaintiff[s] what they suspected up till (sic) then." (Doc. 36 at 2.)  Because Plaintiffs do not allege when they discovered the facts that made them "suspect" that Defendants had engaged in fraudulent activity, the Court cannot identify the precise date upon which Plaintiffs' cause of action accrued.  However, even assuming that Plaintiffs did not discover the alleged fraud, or facts giving rise to the alleged fraud, until June 30, 2008, their common law fraud and fraudulent misrepresentation claims are time barred because Plaintiffs did not commence the pending litigation until April 1, 2013 (Doc. 1), well after the expiration of the three-year statute of limitations.  Accordingly, the Court dismisses Plaintiffs' common law fraud and fraudulent misrepresentation claims as time barred.

### 2.  Arizona Consumer Fraud Act

Plaintiffs also assert that Defendants violated the Arizona Consumer Fraud Act (Doc. 32 at ¶ 47), which prohibits any "deception, deceptive or unfair act or practice, fraud, false pretense, false promise, misrepresentation, or concealment, suppression or omission of any material fact with intent that others rely on such concealment, suppression or omission, in connection with the sale or advertisement of any merchandise . . . ."  Ariz. Rev. Stat. § 44-1522(A).  "The elements of a private cause of action under the act are a false promise or misrepresentation made in connection with the

1    sale or advertisement of merchandise and the hearer's consequent and proximate injury."

2    *Dunlap v. Jimmy GMC of Tucson*, 666 P.2d 83, 87 (Ariz. Ct. App. 1983).

3         Because "[a] consumer fraud claim is created by statute . . . a consumer fraud

4    action must be initiated within one year after the cause of action accrues."   *Alaface v.*

5    *Nat'l Inv. Co.*, 892 P.2d 1375, 1379 (Ariz. Ct. App. 1994); *see* Ariz. Rev. Stat. § 12-

6    541(5).   A cause of action for consumer fraud accrues "when the defrauded party

7    discovers or with reasonable diligence could have discovered the fraud." *Alaface,* 892

8    P.2d at 1379 (internal citations omitted).   Here, Plaintiffs appear to allege that they

9    discovered the alleged fraud in June 2008.   (Doc. 32 at ¶19; Doc. 36 at 2.)   Even

10   assuming that Plaintiffs discovered the fraud, or the facts giving rise to the fraud, on June

11   30, 2008, their consumer fraud claim is time barred because this action was initiated in

12   2013, well after the one-year limitations period expired.   Accordingly, the Court

13   dismisses Plaintiffs' consumer fraud claim.  *See Higton v. Quicken Loans, Inc.*, 2011WL

14   333357, at *3 (D. Ariz. Jan. 31, 2011) (dismissing Arizona consumer fraud claim as time

15   barred).

16        **C.     Breach of Contract/Breach of the Franchise Agreement**

17        Finally, Plaintiffs allege that B&J Smith Investments, through its subsidiaries,

18   failed to disclose and misrepresented material facts pertinent to operating an Eatza Pizza

19   restaurant, which constituted a breach of the Franchise Agreement and, thus, Plaintiffs

20   are entitled to damages under Ariz. Rev. Stat. § 12-548.   (Doc. 32 at ¶ 46.)   Plaintiffs

21   further allege that Defendants breached the Franchise Agreement by failing "to provide a

22   comprehensive system" for operating the franchise, failing "to provide adequate and

23   valuable expertise in running the franchise," and failing "to provide adequate design

24   services for the site." (Doc. 32 at ¶ 48.)

25        **1.     Statute of Limitations**

26        In their previous motion to dismiss, Defendants argued that Plaintiffs' breach of

27   contract claim was barred by the statute of limitations and that it would be futile to allow

28   Plaintiffs to amend their complaint.  (Doc. 19 at 4-5.)  In its December 20, 2013 Order,

the Court rejected Defendants' argument because it did not appear "beyond a doubt" that Plaintiffs could "prove no set of facts that would establish the timeliness of the [breach of contract] claim."  (Doc. 29 at 10 (quoting *Hernandez v. City of El Monte*, 138 F.3d 393, 402 (9th Cir. 1998).)  Therefore, the Court granted Plaintiffs leave to file another second amended complaint and advised Plaintiffs that the amended complaint "must identify the conduct that constituted the alleged breach of the Franchise Agreement, the date on which that conduct occurred, or the date on which they discovered, through the exercise of due diligence, that such conduct had occurred."  (Doc. 29 at 11.)

In the pending motion to dismiss, Defendants argue that Plaintiffs did not adequately allege "when the conduct that gave rise to the action occurred" or "was discovered" and, therefore, the breach of contract claim is barred by the statute of limitations.  (Doc. 34 at 6.)  Defendants further argue that Plaintiffs cannot rely on the discovery rule because they have not "plead that it was through a certain alleged event that the cause action was discovered."  (Doc. 38 at 2.)

The statute of limitations defense may be raised by a motion to dismiss if the running of the statute is apparent on the face of the complaint.  *Jablon v. Dean Witter & Co.*, 614 F.2d 677, 682 (9th Cir.1980).  However, even if the relevant dates alleged in the complaint are beyond the limitations period, the "'complaint cannot be dismissed unless it appears beyond doubt that the plaintiff can prove no set of facts that would establish the timeliness of the claim.'"  *Hernandez*, 138 F.3d at 402 (quoting *Supermail Cargo, Inc. v. United States*, 68 F.3d 1204, 1206 (9th Cir. 1995)).  Indeed, "[d]ismissal on statute of limitations grounds can be granted pursuant to Fed. R. Civ. P. 12(b)(6) 'only if the assertions of the complaint, read with the required liberality, would not permit the plaintiff to prove that the statute was tolled.'"  *Two Rivers v. Lewis*, 174 F.3d 987, 991 (9th Cir. 1999) (quoting *Vaughan v. Grijalva*, 927 F.2d 476, 478 (9th Cir. 1991)).

In Arizona, the statute of limitations for the breach of a written contract is six years.  Ariz. Rev. Stat. § 12-548.  Under the discovery rule, a cause of action does not accrue until the plaintiff knows or with reasonable diligence should have known the facts

1    underlying the cause.  *Doe v. Roe*, 955 P.2d 951, 960 (Ariz. 1998.)  Here, Plaintiffs allege

2    that they entered into the Franchise Agreement on October 24, 2006 and that Eatza Pizza

3    subsequently breached that agreement.  (Doc. 32 at ¶¶10, 46-48.)  Liberally construing

4    the second amended complaint, Plaintiffs allege that they discovered the breach sometime

5    in June 2008 when they received a copy of an Asset Purchase Agreement between Barry

6    Smith, Walbom, and IFA.[6]  (Doc. 32 at ¶ 19.)

7         In opposition to the motion to dismiss, Plaintiffs state that the Asset Purchase

8    Agreement "proved to the Plaintiff[s] what they suspected up till (sic) then."  (Doc. 36 at

9    2.)  This statement suggests that Plaintiffs were aware of the facts giving rise to the

10   breach of the Franchise Agreement sometime before June 2008.  Although Plaintiffs did

11   not comply with the Court's December 20, 2013 directive that they identify the date on

12   which the conduct allegedly constituting the breach occurred, or the date on which they

13   discovered such conduct (Doc. 29 at 10-11), because it does not appear "beyond [a] doubt

14   that the plaintiff[s] can prove no set of facts that would establish the timeliness of the

15   claim," the Court denies Defendants' motion to dismiss the breach of contract claim on

16   statute of limitations grounds.  *See Hernandez*, 138 F.3d at 402.

17              **2.      Plaintiffs' Claims Against the Business Entity Defendants**

18        "For a plaintiff to bring a breach of contract action against a defendant, the

19   plaintiff and defendant must have a contractual relationship."  *Brown v. Kinross Gold

20   U.S.A., Inc.*, 531 F. Supp. 2d 1234, 1240 (D. Nev. 2008).  Therefore, it "is axiomatic that

21   non-parties cannot be held liable for breach of contract[.]"  *Herbal Care Sys., Inc. v.

22   Plaza*, 2009 WL 692338, at *2 (D. Ariz. Mar. 17, 2009); *see Pimal Property, Inc. v.

23   Capital Ins. Group, Inc.*, 2012 WL 608392, at *3 (D. Ariz. Feb. 27, 2012) (dismissing

24   breach of contract claim for lack of privity when defendant was not a party to the contract

25   at issue); *Samuel v. Allstate Ins. Co.*, 19 P.3d 621, 625 (Ariz. Ct. App. 2001), *vacated on*

26

27              [6]  If Plaintiff discovered the alleged breach of the Franchise Agreement in June
     2008, their claim is timely because they filed their original complaint on April 1, 2013
28   (Doc. 1), well within the six-year limitations period.

*other grounds by Samsel v. Allstate Ins. Co.*, 59 P.3d 281 (Ariz. 2002) ("Privity is that connection or relationship which exists between two or more contracting parties.  It arises from the mere fact of entering into a contract.  Generally, privity of contract must exist before one may seek to enforce or defeat the contract."); *Kelly v. Tillotson Pearson*, *Inc.*, 840 F. Supp. 935, 944 (D.R.I. 1994) (stating that "an action for breach of contract will not lie against non-parties to the contract.").

The Franchise Agreement at issue is between Plaintiffs and Eatza Pizza.  (Doc. 32 at ¶ 4; Doc. 37 at 10, 48-49.)  In its December 20, 2013 Order, the Court found that liberally construing the proposed second amended complaint, Plaintiffs appeared to allege that although B&J Smith Associates and B&J Smith Investments (the Business Entity Defendants) were not parties to the Franchise Agreement, they were liable for Eatza Pizza's alleged breach of Franchise Agreement under an alter ego theory of liability.  (Doc. 29 at 5.)  However, because Plaintiffs made only conclusory statements regarding an alter ego theory of liability, the proposed second amended complaint did not include sufficient allegations to state a claim against the Business Entity Defendants.  (Doc. 29 at 7.)  Because Plaintiffs could possibly cure those deficiencies, the Court granted Plaintiffs leave to file a second amended complaint to cure the deficiencies noted in the Order.  (*Id.*)  Defendants argue that Plaintiffs' second amended complaint does not cure those deficiencies and that it fails to set forth specific facts that state a claim of alter ego liability against B&J Smith Associates and B&J Smith Investments.  (Doc. 34 at 6.)

Because this is a diversity case, the court applies state law to determine alter ego liability.  *See Hambleton Bros. Lumber Co. v. Balkin Enters.*, 397 F.3d 1217, 1227 (9th Cir. 2005) (noting that in diversity actions, federal courts must apply state law when evaluating alter ego status); *see also Davis v. Metro Prods. In*c., 885 F.2d 515, 520-21 (9th Cir. 1989) (sitting in diversity and applying Arizona's test for piercing the corporate veil).  Arizona law recognizes a presumption of corporate separateness under which a parent corporation is not liable for the actions of a subsidiary.  *Deutsche Credit Corp. v. Case Power & Equip. Co.*, 876 P.2d 1190, 1195 (Ariz. Ct. App. 1994).  However, the

1    alter ego theory allows a parent corporation to be held liable for the acts of its subsidiary

2    when the individuality or separateness of the subsidiary corporation has ceased.  *See*

3    *Gatecliff v. Great Republic Life Ins. Co*., 821 P.2d 725, 728 (Ariz. 1991).  "An alter ego

4    or agency relationship is typified by parental control of the subsidiary's internal affairs or

5    daily operations."  *Doe v. Unocal Corp.*, 248 F.3d 915, 926 (9th Cir. 2001) (citing

6    *Kramer Motors, Inc. v. British Leyland, Ltd*., 628 F.2d 1175, 1177 (9th Cir. 1980)).

7            To establish an alter ego theory of liability a plaintiff must prove both (1) unity of

8    control and (2) that observance of the corporate form would sanction a fraud or promote

9    injustice.  *Doe*, 248 F.3d at 926 (citing *Dietel v. Day*, 492 P.2d 455, 457 (Ariz. Ct. App.

10   1972)).  Unity of control is shown when a parent exercises "substantially total control

11   over the management and activities" of its subsidiary.  *Gatecliff*, 821 P.2d at 728 (internal

12   citations and quotations omitted).  A plaintiff may establish that a parent has substantially

13   total control, "by showing, among other things: stock ownership by the parent; common

14   officers or directors; financing of subsidiary by the parent; payment of salaries and other

15   expenses of subsidiary by the parent; failure of subsidiary to maintain formalities of

16   separate corporate existence; similarity of logo; and plaintiff's lack of knowledge of

17   subsidiary's separate corporate existence."  *Id*.  Isolated occurrences of some of these

18   factors are not enough to establish a alter ego liability.  *See Patterson v. Home Depot,*

19   *USA, Inc*., 684 F. Supp. 2d 1170, 1177-79 (D. Ariz. 2010).  As the Court previously

20   advised Plaintiffs, when alleging alter ego liability, "'the plaintiff must allege specific

21   facts supporting application of the alter ego doctrine.'"  (Doc. 29 at 6-7 (citing *Barba v.*

22   *Seung Heun Lee*, 2009 WL 8747368, at *4 (D. Ariz. Nov. 4, 2009).)

23           The second amended complaint alleges that B&J Smith Associates and B&J Smith

24   Investments "own Eatza Pizza" and that they were in "total control of Eatza Pizza."

25   (Doc. 32 ¶¶ 3, 10, 41, 43.)  Although "[a]lter ego determinations are highly fact-based,"

26   *Legacy Wireless Servs., Inc. v. Human Capital, L.L.C*., 314 F. Supp. 2d 1045 (D. Or.

27   2004), "[c]onclusory allegations of 'alter ego' status are insufficient to state a claim"

28   because "a plaintiff must allege specifically [the facts and elements of an alter ego

1   claim].”  *Neilson v. Union Bank of Cal., N.A.*, 290 F. Supp. 2d 1101, 1116 (C.D. Cal.

2   2003); *see also Twombly*, 550 U.S. at 555 (requiring more than “labels and conclusions”

3   to survive a motion to dismiss).    Accordingly, these conclusory allegations are not

4   sufficient to state a claim for alter ego liability.

5          In a section labeled “Alter Ego,” the second amended complaint further alleges

6   that the “corporate defendants secretly negotiated settlements of debt for pennies on the

7   dollar through separate [counsel] other than through [Eatza Pizza] to maintain secrecy”

8   (Doc. 32 at ¶ 53), that the “corporate Defendants” “gave Stanley Wolfson all equipment

9   listed in Schedule 3 and 4 of the Asset Purchase Agreement” (Doc. 32 at ¶ 56), and that

10  they disposed of “all of the office furniture along with all of the office equipment located

11  at [Eatza Pizza] corporate offices” in Scottsdale “for their own benefit.”   (*Id.* at ¶ 57.)

12  These allegations are also insufficient to state a claim for relief against B&J Smith

13  Associates and B&J Smith Investments under an alter ego theory of liability.

14         Although Plaintiffs apparently include B&J Smith Associates and B&J Smith

15  Investments under the collective term “corporate defendants,” they failed to set forth

16  facts regarding each separate entity’s relationship with Eatza Pizza and how each separate

17  entity exercised substantially total control over the management and activities of Eatza

18  Pizza.    *See Gatecliff*, 821 P.2d at 728 (discussing factors relevant to alter ego

19  determination); *U-Haul Int’l Inc. v. Nat’l Union Fire Ins. Co.*, 2011 WL 9111, at *4

20  (D. Ariz. Jan. 3, 2011) (finding that plaintiffs’ allegations were insufficient to state a

21  claim under any applicable theory of parent corporation liability when complaint did not

22  allege that AIG “marketed or administered the Plaintiffs’ policy, collected premiums, or

23  participated in the claim decisions that led to [the] lawsuit.”); *but see Pimal Property*,

24  2012 WL 608392, at *5 (denying motion to dismiss alter ego claim when complaint

25  alleged that “CIG [was] actively involved in Defendants’ overall claims process, manages

26  that process, sets claims handling goals and objectives by implementing rules, policies,

27  and procedures” and defendants shared the same CEO, contact information, and

28

1    letterhead, and "CIG substantially control[led] the operations of and finances of Eagle
2    West and CCIC.").

3            In addition, the second amended complaint does not allege common officers or
4    directors, payment of Eatza Pizza's expenses by B&J Smith Investments or B&J Smith
5    Associates, or the failure of Eatza Pizza to maintain formalities of separate corporate
6    existence.  *See Gatecliff*, 821 P.2d at 728; *Bus. Buyers Directory, LLC v. NW Capital*,
7    2009 WL 1698917, at *3 (D. Ariz. Jun. 16, 2009) (dismissing claims based on alter ego
8    theory when complaint alleged facts showing some connection between two companies
9    but did not discuss factors relevant to alter ego liability).

10           Because the Court has already given Plaintiffs an opportunity to amend their
11   complaint to allege sufficient facts to state a claim against B&J Smith Investments and
12   B&J Smith Associates under an alter ego theory of liability, the Court will not permit
13   further amendment and will dismiss Plaintiffs' claims against B&J Smith Associates and
14   B&J Smith Investments.

15                   **3.      Plaintiffs' Claims against the Individual Defendants**

16           As set forth above, the Franchise Agreement at issue is between Plaintiffs and
17   Eatza Pizza.  (Doc. 32 at ¶ 4; Doc. 37 at 10, 48-49.)  Plaintiffs do not argue that Barry
18   Smith, Julia Smith, or Walbom (the Individual Defendants) were parties to the Franchise
19   Agreement (Doc. 32), and non-parties cannot be held liable for breach of contract.
20   *Herbal Care Sys.*, 2009 WL 692338, at *2.  However, in its December 20, 2013 Order,
21   the Court found that liberally construing the proposed second amended complaint,
22   Plaintiffs appeared to allege that although the Individual Defendants were not parties to
23   the Franchise Agreement, they are liable for Eatza Pizza's alleged breach of Franchise
24   Agreement under an alter ego theory of liability.  (Doc. 29 at 8)

25           However, because Plaintiffs made only conclusory statements regarding such a
26   theory of liability, the proposed second amended complaint did not include sufficient
27   allegations to state a claim against the Individual Defendants.  (Doc. 29 at 8-9.)  Because
28   Plaintiffs could possibly cure those deficiencies, the Court granted Plaintiffs leave to file

1    a second amended complaint to cure the deficiencies noted in the Order.   (*Id.* at 9)

2    Defendants argue that Plaintiffs' second amended complaint does not cure those

3    deficiencies and that the second amended complaint fails to set forth specific facts that

4    state a claim based on alter ego liability against the Individual Defendants.   (Doc. 34 at

5    6.)

6          The second amended complaint does not clearly allege that Eatza Pizza is the alter

7    ego of Barry Smith, Julia Smith, or Walbom.  (Doc. 32.)  However, in the section labelled

8    "Alter Ego," Plaintiffs include several allegations that can be construed as claiming that

9    Eatza Pizza is the alter ego of the Individual Defendants.[7]  (Doc. 32 at 12.)  Specifically,

10   Plaintiffs allege that "individual Smith" "fire[d] the then named CEO of Eatza Pizza, Inc.

11   and the[n] subsequently asked Steve Belden to take the position."  (Doc. 32 at ¶ 51.)  The

12   second amended complaint also alleges that Belden, in his capacity as Eatza Pizza's

13   CEO, was under the "direct control of the individual Defendants" and "was summarily

14   discharged . . . with all of the remaining staff before Christmas 2006."  (*Id.* at ¶ 52.)

15         This section of the second amended complaint also includes the Individual

16   Defendants with the Business Entity Defendants in the allegations that Defendants

17   "secretly negotiated settlements of debt for pennies on the dollar through separate

18   [counsel] than through EP in order to maintain secrecy" (*Id.* at ¶ 53), "g[a]ve Stanley

19   Wolfson all of the equipment listed in Schedule 3 and 4 of the Asset purchase agreement

20   without compensation," and that the "dispose[d] of all of the furniture along with all of

21   the office equipment located at EP corporate offices . . . for their own benefit and

22   pleasure." (*Id.* at ¶ 57.)

23         The second amended complaint uses the phrase "individual Defendants"

24   apparently to refer to Barry Smith, Julia Smith, and Walbom.  Plaintiffs fail to set forth

25   specific facts regarding each individual Defendant's relationship with Eatza Pizza.  *See*

26   *U-Haul*, 2011 WL 9111, at *4 (finding that complaint failed to state a claim when it

27

28         [7]  The standards to establish alter ego liability under Arizona law are set forth above in Section V(C)(2).

1   "failed to set forth facts regarding [defendant's] alleged role in any of the alleged

2   activity.").   For example, Plaintiffs do not allege that Barry Smith, Julia Smith, or

3   Walbom commingled personal and corporate funds or diverted company property for

4   personal use.  *See Activator Methods Int'l, Ltd. v. Future Health, Inc.*, 2012 WL 715629,

5   at \*3 (D. Ariz. Mar. 6, 2012) (collecting cases stating that corporation was not an alter

6   ego of an owner absent evidence of commingling of funds or abuse of corporate structure

7   for improper purposes).

8        Additionally, Plaintiffs do not allege that Barry Smith, Julia Smith, or Walbom

9   were "officers, directors, or shareholders" of Eatza Pizza.  *But see Activator Methods*,

10  2012 WL 715629, at \*4 (finding allegations in the complaint that individual defendant

11  owned corporation, usurped corporate assets, and negotiated and signed the partnership

12  agreement at issue in the complaint were sufficient to show unity of control for purposes

13  of stating a claim under the alter ego theory); *Leo Eisenberg & Co.*, 785 P.2d at 54

14  (stating that "the doctrine of 'piercing the corporate veil' applies only to plaintiff who

15  seek recovery against the personal assets of corporate shareholders or directors.").  Thus,

16  the second amended complaint does not sufficiently allege that Eatza Pizza was the alter

17  ego of Barry Smith, Julia Smith, or Walbom.

18        The "Alter Ego" section of the second amended complaint also alleges that the

19  "individual Defendants are the sole officers and shareholders of the corporate

20  Defendants" and that they "absolutely controlled and dominated the corporate

21  Defendants." (Doc. 32 at ¶ 50.)  Plaintiffs further allege that "individual Defendants have

22  misused their absolute control and domination of the corporate Defendants."  (*Id.* at

23  ¶ 61.)  Finally, Plaintiffs allege that the "individual Defendant" "abused the corporate

24  privilege with respect to the corporate defendants" by treating the assets of the "corporate

25  Defendant" as their own; inadequately capitalizing the "corporate Defendant"; failing to

26  reflect the corporate status of the "corporate Defendant" in communications, or purchase

27  and sale documents, diverted corporate assets of the "corporate Defendant"; "treatment

28  by the individual Defendant of assets of the corporate Defendant as his own"; failing to

- 18 -

keep corporate records; and using the "corporate Defendant as a subterfuge for illegal transactions masterminded by the individual Defendants." (Doc. 32 at ¶ 62.)

Because the second amended complaint names three individual and two business entity defendants and includes allegations against another corporate entity, Eatza Pizza, Plaintiffs' use of the terms "individual Defendant," "individual Defendants," "corporate Defendants," and "corporate Defendant," as cited above, is confusing. It is not clear whether Plaintiffs are alleging that B&J Smith Investments was the alter ego of Barry Smith, Julia Smith, or Walbom, that B&J Smith Associates was the alter ego of Barry Smith, Julia Smith, or Walbom, or whether they meant to allege that Eatza Pizza was the alter ego of Barry Smith, Julia Smith, or Walbom.

When pleading alter ego liability, a plaintiff must allege specific facts in support of that theory. *See Barba*, 2009 WL 8747368, at *4. By failing to specifically identify which Individual Defendant took what action with regard to which Business Entity Defendant, or with regard to Eatza Pizza, Plaintiffs falls short of this requirement. *See Fromkin v. IndyMac Bank FSB*, 2010 WL 2541167, at *3 (D. Ariz. Jun. 18, 2010) (finding plaintiff's "fail[ure] to specifically identify which Defendants he is asserting [his] claim against" and failure to "articulate facts supporting" his claims did not satisfy the requirements of *Twombly* and *Iqbal*).

As set forth above, the second amended complaint recites several relevant factors for determining whether there is an alter ego relationship between an individual and a corporation, but does not include any specific facts supporting the application of the alter ego doctrine in this particular case. (Doc. 32 at ¶ 62.) Without such factual allegations, the issue of alter ego, or veil piercing, is not sufficiently pleaded. *See Twombly*, 550 U.S. at 555 ("[a] plaintiff's obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do."); *Iqbal*, 556 U.S. at 678 ("[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements," are not entitled to the assumption of truth); *M&I Marshall & Ilsley Bank v. Lerner*, 2010 WL 5232970, at

*3 (D. Ariz. Dec. 16, 2010) (dismissing claims that were "legal conclusions couched as factual allegations"); *Skydive Ariz., Inc. v. Quattrochi*, 2006 WL 2460595, at *7-8 (D. Ariz. Aug. 22, 2006) (finding that the plaintiff failed to state a claim against the defendants where complaint alleged the alter ego theory with no factual basis).  Because Plaintiffs have not alleged sufficient facts to support an alter ego claim against the Individual Defendants, the Court dismisses Plaintiffs' claims against those Defendants.

**VI.    Conclusion**

The Court grants Defendants' motion and dismisses this action.  Since commencing this action on April 1, 2013, Plaintiffs have amended, or attempted to amend, their complaint several times to cure pleading deficiencies and in reaction to Defendants' motions to dismiss.  (Docs. 10, 15, 19, 22, 26.)  Because Plaintiffs have had sufficient opportunity to amend their complaint, including in response to the Court's December 20, 2013 Order, the Court declines to give them a further opportunity to do so.

Accordingly,

**IT IS ORDERED** that that Defendants' Motion to Dismiss (Doc. 34) is **GRANTED** and that the Second Amended Complaint (Doc. 32) is dismissed.  The Clerk of Court shall terminate this action.

Dated this 8th day of May, 2014.

Bridget S. Bade
United States Magistrate Judge